**Charles SALERNO, Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

**Nos. 93 Civ. 3125 (JES), 88 Cr. 217 (JES).**

United States District Court,
S.D. New York.

Dec. 13, 1994.

John G. O'Brien, Pensacola, FL, for petitioner.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City, for respondent; Margaret S. Groban, Asst. U.S. Atty. of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Petitioner in the above-captioned action brings this petition pursuant to 28 U.S.C. § 2255 in order to set aside or correct his sentence on four separate grounds: 1) that the petitioner was denied the effective assistance of counsel; 2) that the government violated an alleged plea agreement by seeking a sentence pursuant to the Sentencing Guidelines; 3) that the Court erroneously sentenced the petitioner based upon a misapprehension of the available penalties provided by law, violating the petitioner's due process rights; and 4) that the government erroneously introduced evidence from the trial of

others to enhance the petitioner's sentence. For the reasons that follow, the petition is denied.

## BACKGROUND

On April 13, 1988, a grand jury in the Southern District of New York returned indictment 88 Cr. 217 naming twenty-four defendants, including petitioner Charles Salerno ("Salerno"). *See* Indictment 88 Cr. 217. On June 1, 1988, a grand jury returned a superseding indictment naming the same twenty-four defendants and adding four others. *See* Indictment 88 Cr. 217.

On October 24, 1988, Salerno, represented by counsel, pleaded guilty to conspiracy to distribute cocaine, a lesser included offense contained in Count One of the indictment.[1] *See* Plea Transcript dated October 24, 1988 ("Plea Tr.") at 2. In the prosecutor's words at the plea, Salerno pled guilty to "a conspiracy that involves three kilograms of cocaine, and that quantity makes it a zero-to-40 conspiracy." *Id.* at 3.[2]

In response to this Court's questions, Salerno admitted that neither the Court nor the government had made any promises to Salerno or his attorney:

THE COURT: Has anyone made any representations to you, Mr. Salerno, as to what the sentence would be?

THE DEFENDANT: No, Sir.

THE COURT: Other than, it's limited to the forty years.

THE DEFENDANT: No, Sir.

*Id.* at 6. After a lengthy allocution, this Court found that Salerno was of clear mind and understood the proceedings; his plea was therefore accepted. *See id.* at 10–11, 19.

The Court scheduled a protracted sentencing date after the trial of the remaining defendants was completed. *See id.* at 19. Although the Court had held the then new United States Sentencing Guidelines (the "Guidelines") unconstitutional in other cases, at the time of his plea the Court indicated to Salerno that since he committed an offense after the effective date of the Guidelines, the Guidelines would govern his sentence if held constitutional by the Supreme Court in a case then pending:

Let me say a word about the guidelines.... I have ruled the guidelines unconstitutional. If [the] [Supreme Court] agree[s] with me, then you will be sentenced under the old law, which would leave the period of your incarceration solely in my discretion.... If the guidelines are applicable, of course, things change. [T]he sentence I must impose will not be subject solely to my discretion.

*Id.* at 7–8. In addition, this Court also stated, "[t]his being a conspiracy count, there is no mandatory period of supervised release." *Id.* at 7. Prior to Salerno's sentencing, the Supreme Court held that the Guidelines were constitutional as applied to all illegal activities occurring after November 1, 1987. *See Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

On September 20, 1989, this Court sentenced Salerno pursuant to the Guidelines to eighty-two months of incarceration and four years of supervised release. *See* Sentencing Transcript dated September 20, 1989 ("Sent. Tr.") at 27–29. This sentence was within the applicable guideline range of seventy-eight to ninety-seven months, based on the Court's finding that the conspiracy to which Salerno pled guilty involved an agreement to distribute three kilograms of cocaine. *See id.* at 7. The Court also, over defense counsel's objection, included in the Guidelines calculation

---

1. Count One alleged a conspiracy to distribute and possess with intent to distribute heroin and marijuana as well as the cocaine referred to above. and as such carried a penalty of zero to life. *See* Plea Transcript at 2–3.

2. At the plea proceeding, Salerno admitted to having had a conversation with his co-defendants regarding the distribution of three "pieces" of cocaine which fell within the price range for three kilos. *See* Plea Tr. at 17–18. Prior to sentencing, Salerno filed a motion alleging that

"pieces" meant ounces and not kilos, *see* Salerno's Notice of Motion dated June 29, 1989, but subsequently withdrew that motion after having reported to the Probation Department on September 6, 1989, that his reference to "three pieces" actually meant "three kilograms of cocaine," *see* Addendum to Pre-Sentence Investigation Report, so as not to lose his two-level reduction for acceptance of responsibility. *See* Transcript dated July 13, 1989 at 2–6.

another kilogram of cocaine, based on a December 3, 1987 conversation, which the Court found to be part of the same conspiracy. *See id.* at 16, 19–20. However, the Court did not include a fifth kilogram of cocaine because it accepted defense counsel's argument that there was insufficient evidence to support its inclusion. *See id.* at 19–20. The Court also declined to enhance Salerno's sentence based on heroin dealings and an assault allegation because neither charge was part of the lesser included conspiracy to which Salerno had pleaded guilty. *See id.* at 20.

In calculating the Guidelines range, this Court reduced the base offense level of thirty by two levels for acceptance of responsibility. *See id.* Moreover, in deciding whether to sentence Salerno at the low end or the high end of the applicable range, the Court took into consideration Salerno's involvement in other drug activities, *see id.* at 27–28, relying, specifically, on a transcript from a November 3, 1987 conversation. *See id.* at 24–27. The Court did not further enhance Salerno's sentence based on testimony by Salerno's co-defendant Filippo Ricupa at Ricupa's own trial:

> I think the government has a fairly strong argument that the defendant's conduct with respect to drugs based upon the transcripts which are available, without even reaching the Ricupa situation, would justify at least a conclusion by the Court on sentencing that this defendant has been involved in drug activity other than that to which he has pleaded.

*Id.* at 28. Although, as the Court had previously noted, no mandatory period of supervised release was required, in its discretion the Court imposed a four-year term of supervised release.

Finally, the Court noted Salerno's right to appeal:

> We are all cutting new ground in the guidelines anyway until we find out what the law is. That is my factual determination for the purpose of the Second Circuit Court of Appeals. If what I have done is not legally permissible, that is an argument the Court of Appeals can address. But if you take an appeal from that, the government is going to take an appeal very

likely from it anyway. You have to decide whether or not it is worth it to do that. It is that simple.

*Id.* at 22. Neither the government nor Salerno appealed either Salerno's conviction or sentence.

Represented by new counsel on April 22, 1993, Salerno filed a petition pursuant to 28 U.S.C. § 2255 to set aside or correct his sentence.

## DISCUSSION

■ Where, as here, a defendant has failed to raise a claim on direct appeal, his claim is barred from collateral review on a 28 U.S.C. § 2255 petition unless he can demonstrate "cause" for the default of normal appellate procedure and actual "prejudice" from the alleged violation on which the claim is based. *See Campino v. United States,* 968 F.2d 187, 189 (2d Cir.1992); *see also United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982). Under the cause and prejudice test, "'[c]ause' ... must be something *external* to the petitioner, something that cannot fairly be attributed to him," *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991) (emphasis in original), and the "prejudice" must be so substantial that it undermines the integrity of the entire proceeding. *See Frady,* 456 U.S. at 170, 102 S.Ct. at 1595–96.

■ The Second Circuit has recently carved out an exception to the *Campino* requirement that a § 2255 petition establish cause. For those § 2255 petitions that raise the issue of ineffective assistance of counsel, cause does not have to be established unless (1) the petitioner was represented by new appellate counsel on direct appeal and (2) the claim is based solely on the record developed at trial. *See Billy–Eko v. United States,* 8 F.3d 111, 115 (2d Cir.1993).

■ Where, as here, however, there was no appeal, both *Campino* and the *Billy–Eko* exception thereto, which are designed for cases in which, unlike here, an appeal is taken, are not strictly applicable. Indeed, "[t]hose whose right to appeal has been frus-

trated" enjoy an even broader exception to the "cause" and "prejudice" requirement to the extent that, if they can establish that their right to appeal has been frustrated, they must be granted leave to appeal and thereafter "treated exactly like any other appellants." *Rodriguez v. United States,* 395 U.S. 327, 330, 89 S.Ct. 1715, 1717, 23 L.Ed.2d 340 (1969); *see also Abels v. Kaiser,* 913 F.2d 821 (10th Cir.1990), *Estes v. United States,* 883 F.2d 645 (8th Cir.1989), *United States v. Tajeddini,* 945 F.2d 458 (1st Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 3009, 120 L.Ed.2d 883 (1992), *Lozada v. Deeds,* 964 F.2d 956 (9th Cir.1992), and *United States v. Peak,* 992 F.2d 39 (4th Cir.1993). In order to establish frustration of his appeal, however, Salerno must show that his failure to appeal was not voluntary, but rather that he "ask[ed] his lawyer to perfect an appeal and the lawyer fail[ed] to do so by failing to file a brief, a statement of appeal or otherwise." *Abels v. Kaiser, supra,* 913 F.2d at 823 (citations omitted). This is a burden Salerno cannot and does not even try to meet.

Although Salerno argues that he did not file an appeal because he was not informed of his right to do so, that claim is not credible for the following reasons. First, the Court specifically discussed the possibility of an appeal at sentencing. *See* Sent.Tr. at 22. Furthermore, Salerno does not even claim that he asked his lawyer to file an appeal. Indeed, he concedes that his counsel told him that "his appointment ended upon sentencing, that he had more than enough of Mr. Salerno, and that his obligation to Mr. Salerno ended when he pleaded guilty." Petitioner's Memorandum in Support of Motion to Set Aside or Correct Sentence ("Pet'r Br.") at ¶ 79. Having been specifically told that the lawyer would not represent him on appeal, it was incumbent upon Salerno to seek new appellate counsel.

In any event, all of the claims raised on Salerno's petition lack substantive merit, regardless of whether or not they are procedurally barred. The standard governing Salerno's claims of ineffective assistance of counsel is well settled. The defendant must: (1) overcome a strong presumption that his counsel's conduct was reasonable and show that his counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms;" and (2) "affirmatively prove prejudice," that is, show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 687–94, 104 S.Ct. 2052, 2064–68, 80 L.Ed.2d 674 (1984); *see also United States v. Aguirre,* 912 F.2d 555, 560 (2d Cir.1990); *United States v. Reiter,* 897 F.2d 639, 645 (2d Cir.1990), *cert. denied,* 498 U.S. 817, 111 S.Ct. 59, 112 L.Ed.2d 34 (1990); *United States v. Bari,* 750 F.2d 1169, 1182 (2d Cir.1984), *cert. denied,* 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985).[3]

Salerno's contentions in support of his claim of ineffective assistance of counsel, however, fall short of demonstrating that his counsel's conduct was unreasonable. First, defense counsel objected to all of the government's attempts to enhance Salerno's sentence. *See* Sent.Tr. at 11, 13, 20, 23. Many of his objections were sustained, and the fact that he was not successful with respect to every argument he made, without more, is hardly sufficient to support a claim of ineffective assistance of counsel. Nor does Salerno's disagreement with counsel's use of objections, *see* Pet'r Br. ¶ 69, by itself, prove ineffective assistance of counsel. *See Billy–Eko v. United States, supra,* 8 F.3d at 118; *Duncan v. Baldwin,* 17 F.3d 394 (9th Cir. 1994) (holding that defendant "failed to es-

---

**3.** Salerno claims that in light of the Crime Control Act of 1990, the *Strickland* standard is improper. *See* Petitioner's Reply ¶ 2. Salerno contends that he need only prove that his attorney's errors were not harmless, *see id.* ¶ 8, based on a House Report reprinted in *U.S.C.C.A.N.* which states that *"Strickland* has been severely criticized for its unrealistic view of inadequacy of counsel. [fn. omitted] The Committee acknowledges these criticisms but takes no position on them at this time." [sic] *Id.* ¶ 2. However, this

statement is in a sub-section of the Report's habeas corpus analysis entitled "Counsel in Capital Cases" and indicates that Congress was merely expressing its dissatisfaction with the *Strickland* standard, *see id.* ¶¶ 2–3, not changing it. In any event, even assuming, *arguendo,* that the Court were to reject the Supreme Court's standard, Salerno has offered no proof that his attorney's alleged errors were more than harmless. Thus, this contention adds nothing to Salerno's argument.

tablish a claim of ineffective assistance of trial counsel because counsel's decision not to object to the [victim's] counselor's testimony was based on his professional judgment, was not objectively unreasonable ...").

Furthermore, with respect to Salerno's claims that defense counsel was ineffective in failing to enforce an alleged plea agreement and that the government violated that alleged plea agreement, Salerno has not established that any plea agreement was ever made. Indeed, Salerno himself admitted, when questioned by this Court, that no other promises had been made, see Plea Tr. at 6, which conclusively demonstrates that the *only* agreement between Salerno and the government was that Salerno would plead to a conspiracy that carries a penalty of zero to forty years incarceration. Moreover, to the extent that at various points in his petition, Salerno alleges that he believed he had only agreed to plead guilty to a pre-Guidelines conspiracy limited to three kilograms of cocaine, see Pet'r Br. ¶¶ 66, 80, that claim is simply belied by the record of the plea, which clearly shows that the Court apprised Salerno of the fact that his sentence could be governed by the Sentencing Guidelines if held constitutional by the Supreme Court.

Salerno further contends that he did not understand what he was pleading to due to his lack of education and insufficient reading and writing skills. See Petitioner's Reply ("Pet'r Rep.") ¶ 23. This argument is untenable. After a thorough allocution, the Court concluded that Salerno did understand the proceedings, particularly in relation to the possible application of the Sentencing Guide-

lines. See Plea Tr. at 10.[4] The Court sees no reason to depart from that factual finding.

■ Furthermore, to the extent that Salerno's second claim—*i.e.*, his disagreement with the government's version of the conspiracy—is intended as an application to withdraw his plea now, such a disagreement is not a valid ground to withdraw a guilty plea.

> Where the invalidity of a plea of guilty is asserted in a § 2255 proceeding, the court's duty is to examine the record of the plea proceedings to determine ... whether *that record* demonstrates that the defendant's plea was made voluntarily with an understanding of the nature of the charge and that there was a factual basis for the plea.

*Seiller v. United States*, 544 F.2d 554, 567 (2d Cir.1975) (emphasis in original). The plea record clearly shows that these criteria were met.[5]

■ Salerno's third argument—that his due process rights were violated by the Court's alleged "misapprehension" of available penalties—is no more availing. All of the events that this Court relied upon to convict Salerno and to formulate his sentence took place after November 1, 1987. See Plea Tr. at 7, 16, 24. Thus, this Court had no discretion but to use the Guidelines. See *Mistretta, supra,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Furthermore, as discussed above, the Court specifically advised Salerno of this fact at the time of the plea.

Finally, Salerno's last argument that his due process rights were violated by this Court's erroneous use of evidence from the

---

**4.** Salerno also claims that he relied to his detriment on the Court's statement at the plea that "[t]he guidelines are calling for a range of 60 months' incarceration." See Pet'r Br. ¶¶ 73–74. However, where, as here, the applicable Guidelines sentence is not easily ascertainable, the Court need only inform the defendant of the statutory minimum and maximum penalties. See *United States v. Fernandez,* 877 F.2d 1138, 1143–44 (2d Cir.1989).

**5.** Salerno, in claiming that he never agreed with the government's version of the conspiracy, also asserts that he is entitled to a rehearing. See Pet'r Br. ¶¶ 54–55. In somewhat of a *non sequitur,* Salerno bases this theory on the fact that the

Court reduced the sentences of two of his co-defendants, Vincenzo Miceli and Michele Modica, upon resentencing after they appealed their original sentences. See *id.;* Pet'r Rep. ¶ 36. Contrary to Salerno's misconception of the facts, Miceli and Modica lost their appeals. In fact, due to a successful appeal on the part of the government, they were resentenced. See Resentencing Transcript of Miceli and Modica dated January 10, 1992 at 80–88. In the context of that resentencing, the Court lowered their sentences to give them each the benefit of a two-level reduction for acceptance of responsibility, *see id.,* which Salerno had received at the outset. See Sent.Tr. at 19.

trial of others to enhance his sentence is also belied by the record. Although the government pressed for an enhancement based on the testimony of Salerno's co-defendant Ricupa at Ricupa's own trial, this Court expressly declined to rely on that evidence to enhance the sentence. *See* Sent.Tr. at 25–27.

## CONCLUSION

For the reasons stated above, the Clerk of the Court is directed to dismiss the petition and close the above-captioned action.

It is **SO ORDERED.**